MARTHA A. BENTON *vs.* TRUSTEES OF THE CITY HOSPITAL OF THE CITY OF BOSTON.

Norfolk.    March 10. — June 20, 1885.    W. ALLEN, COLBURN, & HOLMES, JJ., absent.

No action can be maintained against the Trustees of the City Hospital of the city of Boston, incorporated by the St. of 1880, c. 174, by a person who has entered the hospital building on business, for personal injuries occasioned by reason of the unsafe condition of the covering of stairs over which he is passing in leaving the building, although such condition is caused by the negligence of the superintendent of the hospital.

TORT for personal injuries occasioned to the plaintiff, on November 27, 1883, by falling down a flight of stairs on the outside of, and attached to, the building known as the City Hospital, in Boston.

Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows:

The St. of 1858, *c.* 113, authorized the city of Boston "to erect, establish, and maintain a hospital for the reception of persons who by misfortune or poverty may require relief during temporary sickness." The act also gave the city council

power to make such ordinances, rules, and regulations as it might deem expedient, for the appointment of trustees, and other necessary officers, agents, and servants for managing the hospital.

Under this act, the city of Boston erected hospital buildings, and now own the same, and the grounds on which they stand.

The St. of 1880, *c.* 174, § 1, provides that " the trustees of the City Hospital of the city of Boston for the time being are hereby made a corporation by the name of the Trustees of the City Hospital of the city of Boston."

Section 2 gives the corporation authority to take and hold real and personal estate to a certain amount, " which may be given, granted, bequeathed, or devised to it, and accepted by the trustees. . . . . Money received by it shall be invested by the treasurer of the city of Boston under the direction of the finance committee of said city ; and all securities belonging to said corporation shall be placed in the custody of said treasurer : provided, always, that both the principal and income thereof shall be appropriated according to the terms of the donation, devise, or bequest, under the direction of said corporation."

Section 4 gives the trustees power to make such rules and regulations relating to the hospital, and its officers and servants, as they may deem expedient.

Section 5 provides that " the said trustees shall, subject to the direction of the city council, by ordinance or otherwise, have the general care and control of the City Hospital, . . . . together with the buildings and rooms containing the same."

Section 6 gives the board of trustees power to appoint a superintendent, with such assistants and subordinate officers as they may think necessary or expedient.

By the rules of the hospital, the superintendent has charge of the buildings. It is also his duty, under direction of the trustees, to decide what patients are required to pay for their board.

By the ordinances of the city, " the trustees may afford to persons making compensation therefor separate apartments and more accommodations than are customary when no compensation is made, and the compensation so received shall be credited to the account of the hospital."

The corporation at the time of the accident, and for a long time before, had been exercising in and upon and about said City Hospital, and the buildings and grounds thereof, all the powers conferred upon said corporation by the act of incorporation.

The plaintiff offered evidence tending to prove that, in November, 1883, she resided in Hyde Park, and had in her family and under her care a grandchild named Lizzie B. Tarnham, five or six years old, whose parents were out of this State; that she, desiring to have a surgical operation performed on the child for a club-foot, was advised by her physician to go to said hospital; that, about a week before the accident, she went to the hospital, and applied to have the child treated there, and then made an arrangement or contract with the proper officer of the corporation to have the child boarded and treated there for such length of time as would be required for her proper treatment, and she agreed to pay one dollar per day for the board and attendance which the child was to receive at the hospital; that the next day she took the child there under such contract or arrangement; that she had permission or an invitation from the proper officer of the corporation to enter the hospital and visit the child, and to see when it was a proper time to take her away, out of the regular visiting days and hours, and was informed how to get in when she came out of the regular visiting days and hours; that she went once or twice to visit the child before the day of the accident; that on the day of the accident, between three and four o'clock in the afternoon, she went to the hospital for the purpose of seeing when the child could be taken home, and of making arrangements therefor, and entered the hospital building up the centre or main staircase, or entrance; that she saw the superintendent's assistant, and arranged to take the child away the next day, and, by his permission, was shown by a porter upstairs to the ward where the child was; that she remained there until about five o'clock, when a nurse informed her that it was time for her to leave, and called a porter or attendant, who showed her downstairs, through a hall, to an outside door, near the top of the stairs where she was injured, and opened the door, and directed her to go out that way; and that, in going down the stairs, she tripped and fell, and received the

injuries complained of. It appeared that the plaintiff had never before been over these stairs.

There was also evidence tending to show that said stairs consisted of eleven or twelve steps, made of plain hewn granite, and were on the outside of the building, and leading from the main floor to a paved walk and driveway leading directly out of the grounds to Harrison Avenue; that the superintendent had charge of the stairs, and, about a week before the accident, he covered them or caused them to be covered with boards; that these board coverings were put on in an improper and unsafe manner, and were, at the time of the accident, negligently left in an unsafe condition, and by reason thereof the plaintiff was injured; and that the plaintiff was in the buildings on that day, by an invitation, express or implied, from the superintendent of the hospital, elected by the corporation under the authority given by the St. of 1880, and, in going out over the stairs, was in the exercise of due care.

The plaintiff admitted that the stairs, as originally built, and without the board covering, were safe and sufficient. It appeared that the board coverings were originally made or furnished by the city before the corporation was chartered, and were used by the city on these stairs, in the winter, as long ago as 1879; that the coverings were taken off and apart, and packed away in the spring, and then put on in the fall and used through the winter; that the superintendent at the time of the accident was superintendent before the incorporation of the defendant; that there had been no change in the ownership or occupation of the hospital from June, 1879, when the superintendent took charge, until the time of the trial, except such as was effected by the incorporation of the defendant, and by its acts herein recited.

It also appeared that the city of Boston appropriated some $150,000 annually towards the support of the hospital; that the corporation receives from paying patients and non-residents, for the board and attendance of such paying patients boarded and treated there, from $12,000 to $14,000 annually, which sums are added to the appropriations and used in the support of the hospital; that physicians and surgeons who perform professional services at the hospital for the patients there receive no compensation from the city or from the corporation; that, the next

day after the accident, said child was taken away, and the charges for her board and attendance were paid, according to the contract made by the plaintiff; that nothing was paid to, or to be paid by, the city or the corporation to the physician or surgeon who attended upon the child for their services so rendered; and that the corporation had received no gifts or bequests since its incorporation.

Upon the above facts and evidence, the judge ruled that the action could not be maintained; and directed a verdict for the defendant. The plaintiff alleged exceptions.

*C. G. Keyes*, for the plaintiff.

*T. M. Babson*, for the defendant.

FIELD, J. If the trustees are regarded as the trustees of a public charity, then the case falls within the decision in *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432. There is no evidence of negligence on the part of the trustees as a corporation. There is evidence of negligence on the part of the superintendent, but there is no evidence that he was not a proper person to be appointed superintendent. But we think that this is a hospital maintained by the city, with such aid as may be derived from donations, and the sums received from paying patients; and that the trustees are in a sense managing agents only in maintaining the hospital, subject to the laws and to the ordinances of the city. The donations, if any are ever made, must be used according to the terms of the gift. The money appropriated by the city of Boston must be used according to the terms of the appropriation. The sums received from paying patients are by the ordinance to "be credited to the account of the hospital," and are, as stated in the exceptions, "used in the support of the hospital." All the funds are used for the purpose of maintaining the hospital in accordance with the St. of 1858, c. 113. The corporation of the Trustees of the City Hospital of the city of Boston has in fact no property. The St. of 1858, c. 113, is a special, and not a general statute, and it is permissive, and not imperative; but these distinctions would not render the city liable for negligence in the management of the hospital, as has been shown in *Tindley* v. *Salem*, 137 Mass. 171. The trustees are a body created for the performance of a duty, which, under the authority of the statute,

the city of Boston has assumed for the benefit of the public, and from the performance of which no profit or advantage is derived either by the trustees or the city. The trustees as a corporation are no more liable for the negligence of their officers and agents than the city would be. The case is governed by the principles declared in *Hill* v. *Boston*, 122 Mass. 344.

*Exceptions overruled.*