Abston v. Waldon Academy.

MINNIE ABSTON, by next friend, v. WALDON ACADEMY.*

(*Nashville*.   December Term, 1906.)

1. **CHARITABLE INSTITUTIONS.**  Not liable for personal in-
   juries resulting from the negligence of their officers, agents,
   trustees, or managers, when.

   A charitable institution incorporated for purely educational pur-
   poses and operated and conducted, from charitable bequests, as
   an eleemosynary corporation, whose foundations were laid in
   charitable donations to be held in trust as a public charity, ac-
   cording to the express will of the donors, and whose whole prop-
   erty has come from such charitable gifts, and constitutes a char-
   itable use, is not liable for personal injuries resulting to one of its
   students from its negligence in failing to erect  fire escapes as
   required by city ordinance and State statute.   Such charitable
   institutions are exempt from liability for the negligence of their
   officers, agents, trustees, or managers.   Such trust funds can-
   not be appropriated or applied to the payment of damages for
   injuries resulting from the negligence of the managers thereof.

   Acts cited and construed:   1899 ch., 178.

   Cases cited and approved:   Franklin v. Armfield, 2 Sneed, 305;
      Hospital v. Ross (House of Lords Cases), 12 Clark & Finnelly,
      507; Duncan v. Findlater, 6 Clark & Finnelly, 894; Downes v.
      Hospital, 101 Mich., 555; Insurance Co. v. Boyd, 120 Pa. St., 624;
      McDonald v. Hospital, 120 Mass., 432; Benton v. Hospital, 140
      Mass., 13; Perry v. House of Refuge, 63 Md., 20; Parks v. Univer-
      sity, 218 Ill., 381; Williamson v. School (Ky.), 23 L. R. A., 200,
      note.

   Cases cited and distinguished:   Merse Dock Trustees v. Gibbs,
      11 House of Lords, 686; Coe v. Wise, 5 Best & S. M., 440, 4 New
      Rep., 354; Glavin v. Hospital, 12 R. I., 411; Maia v. Hospital,

---

*As to liability of charitable institution for negligence, see note
to Williamson v. Louisville Industrial School (Ky.), 23 L. R. A., 200.

Abston v. Waldon Academy.

97 Va., 507; Trevett v. Association, 98 Va., 332; Sweeney v. Railroad, 10 Allen (Mass.), 368; Stewart v. Harvard College, 12 Allen (Mass.), 58; Davis v. Church, 129 Mass., 367.

2. **SAME. Same. Rule not qualified by requirement of pupils to pay tuition and board.**

The doctrine stated in the foregoing headnote is not qualified by the fact that the corporation administering the trust required its pupils to pay tuition and board. (*Post, p.* 38.)

Cases cited and approved: Andrews v. Andrews, 110 Ill., 223; Parks v. University, 218 Ill., 381.

3. **SAME. Same. Rule not qualified by charter provision that it "may sue and be sued."**

The doctrine and rule of exemption stated in the first headnote is not qualified by the fact that the charter of incorporation of the charitable institution provides that it "may sue and be sued." There is abundant scope for the operation of this power and right without overturning the principle announced in the first headnote. (*Post, p.* 38.)

Acts cited and construed: 1865-66 (private), ch. 115, sec. 2.

4. **SAME. Managers are liable in damages for personal injuries resulting from their negligent failure to erect fire escapes.**

For personal injuries resulting to a student of a charitable institution from the negligence of the managers of the institution in failing to erect fire escapes, an action will lie against them for the damages. (*Post, p.* 38.)

## FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—JOHN W. CHILDRESS, Judge.

J. B. DANIEL and PAUL W. HOGGINS, for Minnie
Abston.

JAMES TRIMBLE and J. C. BRADFORD, for Waldon
Academy.

————

MR. CHIEF JUSTICE BEARD delivered the opinion of
the Court.

The defendant in error is a corporation chartered
in 1866 by the legislature of Tennessee under the name
and style of the "Central Tennessee Methodist Episco-
pal College," which original name was by subsequent
enactment changed to that of "Waldon Academy." This
institution was incorporated for purely education pur-
poses in the interest of the negro race, then but recently
emancipated. Being an eleemosynary corporation, it is-
sued no stock, and it has paid no dividends. Its founda-
tions were laid in charitable donations, and during its
entire history, according to the averments of the special
plea in this cause, confessed by demurrer to be true, it
has "been operated and conducted from bequests," and
"its grounds, buildings, and trust funds" have come
from such bequests; the whole, "according to the ex-
pressed will of the donors," "to be held in trust as a pub-
lic charity."

Minnie Abston, for whose use this suit was brought,
was a pupil of this institution, and on the night of the
18th of December, 1903, she occupied a room in a three-
story building erected by the corporation on the Acad-

emy grounds to furnish sleeping apartments for the young girls in attendance upon the school, when it took fire, and in an attempt to escape from the flames she leaped from a window on the third floor and was seriously injured. This action was brought to recover damages for the injuries thus sustained, on the ground that an ordinance of the city of Nashville, within whose limits this building stood, required the erection of "suitable and sufficient fire escapes" on a building of the character of the one in question, and that the same duty was imposed by chapter 178 of the Acts of the Legislative Session of 1899, and by reason of the failure of the corporation to erect fire escapes it was impossible for the plaintiff in error to escape death, save as she did in the manner above indicated. The question is: Can such an action be maintained where, if so, the property placed by benevolent parties under the control of this corporation for what is well settled in this State to be a charitable use (*Franklin* v. *Armfield*, 2 Sneed, 305) must be appropriated to its satisfaction?

We are satisfied that neither on principle nor on authority can this be done. The leading case on this subject is that of *Feoffees of Heriot's Hospital* v. *Ross* (House of Lords Cases), 12 Clark & Finnelly, 507. The facts there were that in 1623 one George Heriot by will left to the municipal authorities of the city of Edinburgh a fund to be used by them in the purchase of lands, upon which was to be erected a hospital within the limits of that city, to be maintained in perpetuity, for the "relief,

bringing up, and education of such poor, fatherless boys, freemen's sons, of the town," as the means thus given would provide for. An applicant, coming within the description of those thus named by the donor, was refused by the authorities upon whom was devolved the corporate duty of admitting applicants to the hospital, whereupon he brought his suit to recover damages for his assumed wrongful rejection. From the judgment of the Scotch court, awarding damages payable out of the trust funds, the case was carried by writ of error to the House of Lords of England. It was there held that a charitable institution, such as was the one in question, was exempt from damages for negligence of its trustees. In the course of his opinion Lord Cottenham used this language: "It would be in vain to search the records of this country for any judgment of a court directing trust funds to be applied to any purpose different from that for which they were originally given. . . . It is obvious that it would be a direct violation in all cases of the purposes of a trust if this could be done, for there is not any person who ever created a trust that provided for the payment of damages out of it to be recovered from those that had the management of the fund. No such provision has been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are the subjects of the charity. To give damages out of a trust fund would not be to apply it to those subjects which the author of the fund

Abston v. Waldon Academy.

had in view, but would be to divert it to a completely different purpose."

Lord Brougham, in the course of his opinion in this case, said: "The charge is that the governors of the hospital had illegally and improperly done the act in question, and because the trustee had violated the statute —therefore what? Not that they themselves shall pay the damages, but that the trust fund which they administer shall be made answerable for their misconduct. The finding on this point is wrong, and the decree of the court must be reversed." To like effect is the opinion of Lord Campbell.

It is said, however, by the counsel representing the plaintiff below in this cause, that this case was overruled by the later case of *Merse Dock Trustees* v. *Gibbs*, 11 House of Lords, 686. Nowhere in the opinion of Mr. Justice Blackburn, or those of the Lord Chancellor and Lord Westbury, all of which recommended an affirmance of the judgment in the court below against the trustees, is the earlier case referred to. This omission, we think, can be accounted for only on the ground that the two cases were regarded as essentially dissimilar, and that the principle controlling in the one was not to be applied in the other.

Mr. Justice Blackburn, in his opinion, traces the legislative history of the Merse Docks. He said that "the members of the town council of Liverpool, and their successors, were formed into a corporation by the style of the 'Trustees of the Liverpool Docks.' . . . The

powers of this corporation were to be exercised by a committee . . . subject to these provisions. We may say that the effect of the legislation was that the dock trustees were empowered to make and maintain docks and warehouses, which were to be open to the use of the public, paying dock rates for the use of the docks and warehouse rates for the use of the warehouses. The same accommodation and the same services were to be supplied to those using the docks and warehouses, respectively, that would have been supplied by any ordinary dock and warehouse proprietor to their customers."

The learned judge, after giving the various acts of the Parliament passed with regard to these docks, and setting out the powers of the trustees, as well as the manner of the appropriation of the revenues derived by these trustees from the dock and warehouse rates, then adds: "Now it is obvious that a shipowner who pays dock rates for the use of docks, or the owner of goods who pays warehouse rates for the use of the warehouse and the services of the warehousemen, is, as far as he is concerned, exactly in the same position, however the rates may be appropriated. He pays the rates for the dock accommodation, or for warehouse accommodation and service, and he is entitled to expect that reasonable care shall be taken that he shall not be exposed to damage in using the accommodation for which he has paid. It is well observed by Mr. Justice Miller, in *Coe* v. *Wise* (5 Best & S. M., 440), 4 New Rep., 354, of corporations like the present, formed

for trading and other profitable purposes, that though such corporations may act without reward to themselves, yet in their very nature they are substitutions on a large scale for individual enterprise. And we think, in the absence of anything in the statutes (which create such corporations) showing a contrary intention in the legislature, the true rule of construction is that the legislature intended that the liability of corporations thus substituted for individuals should, to the extent of their corporate funds, be coextensive with that imposed by the general law on the owners of similar works."

We think these extracts show very clearly that the principle upon which rests *Feoffees of Heriot's Hospital* was not involved in the later case, and that the earlier case cannot be said to be qualified to any degree or overruled by it. It is true in *Feoffees of Heriot's Hospital* the learned judges delivering the several opinions did regard the case of *Duncan* v. *Findlater,* 6 Clark & Finnelly, 894, as sustaining the conclusion announced in the one then at bar, and that the authority of that case was shaken by the opinion in the case of the *Merse Dock Trustees;* but the rule that trust funds cannot be appropriated to satisfy claims growing out of the wrongs of the trustees thereof, or their agents, remains, so far as we have been able to ascertain, unshaken, and is the law of England today.

By the American courts that case has often been referred to, and a very large number of these courts have

passed judgments bottomed on it as authority. In *Downes* v. *Harper Hospital,* 60 N. W., 42, 101 Mich., 555, 25 L. R. A., 602, 45 Am. St. Rep., 427, the question decided in *Feoffees of Heriot's Hospital* was directly involved, and settled in accordance with the holding in that case. There the intestate of the party instituting the action was an inmate of a charitable asylum, established by the benevolence of an individual and controlled by a corporation organized to administer the charity, tore iron bars from an upper window of a dormitory where he was confined, and, jumping out, was killed. The negligence alleged, upon which a recovery was sought against the hospital, was that of the trustees in the construction of the building and of their employees in not properly guarding the inmates.

In disposing of the case the supreme court of Michigan, following exactly the line of argument adopted in the English case, said: "If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of trustees, or architects and builders upon whose judgment reliance is placed as to plans and strength of materials, or physicians employed to treat patients, and of nurses and attendants. In this way the trust fund might be entirely destroyed and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus thwarted by negligence for which the donor is in no sense responsible. If, in the proper execution of a trust,

a trustee or an employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust, and does not permit it to be frittered away by the negligent acts of those employed in its execution.

In *Fire Insurance Company* v. *Boyd*, 120 Pa. St., 624, 15 Atl., 553, 1 L. R. A., 417, 6 Am. St. Rep., 745, there was an effort to hold the Fire Insurance Patrol, a charitable institution of Philadelphia, liable for the negligence of one of its employees, resulting in the death of the intestate of Boyd; but the court declined to apply the doctrine of *"respondeat superior"* to the case. In the course of the opinion the court said: "A public charity, whether incorporated or not, is but a trustee, and is bound to apply its funds in furtherance of the charity and not otherwise. This doctrine is hoary with antiquity, and prevails alike in this country and in England, where it originated as early as the reign of Edward V, when it was announced in the year book of that period." The court then proceeded to make the same excerpts from the opinions of Lords Cottenham, Brougham, and Campbell as we have hereinbefore set out, and added "that these quotations from the opinions of these great jurists were given so fully because they expressed in vigorous and clear language the law upon the subject." In support of the principle there announced, the court cited many American cases. To these we add *McDonald* v. *Massachusetts General Hospital*, 120

118 Tenn—3

Mass., 432, 21 Am. Rep., 529; *Benton* v. *Boston City Hospital Trustees,* 140 Mass., 13, 1 N. E., 836, 54 Am. Rep., 436; *Perry* v. *House of Refuge,* 63 Md., 20, 52 Am. Rep., 495, and *Parks* v. *Northwestern University,* 75 N. E., 991, 218 Ill., 381, 2 L. R. A. (N. S.), 556.

It is insisted, however, that there are a number of cases from courts of last resort which enforce a different and, as is said, a sounder view. Among these the leading case is *Glavin* v. *Rhode Island Hospital,* 12 R. I., 411, 34 Am. Rep., 675, in which it was held that a corporation administering a trust for a public charity was liable for the negligence of one of its employees by which a patient was injured. The court there said: "We understand that the doctrine is that the corporate funds can be applied, notwithstanding the trust for which they are held, because the liability is incurred in carrying out the trust and is incident to them." As if out of abundant caution it is added: "We do not understand, however, that a corporate property is all equally applicable. For instance, in the *Case of Merse Docks* it was not decided that the docks themselves could be resorted to, but only the unapplied funds which the board then had, or might afterwards acquire. So, in the case at bar, it may be that some of the corporate property, the buildings and grounds, for example, is subject to so strict a dedication that it cannot be diverted to the payment of damages. But, however that may be, we understand that the defendant corporation is in receipt of funds which are applicable generally to the

uses of the hospital, and, following the decision in *Merse Docks* v. *Gibbs,* we think, a judgment in tort for damages against the corporation can be paid out of them."

In the present case no such condition is apparent, and, if a judgment was permitted, we see no way to satisfy it save by an appropriation of the grounds, buildings, and other properties of Waldon University, touched directly by a charitable use; and that, upon the authority of *Glavin* v. *Rhode Island Hospital,* should not be allowed.

So far as we have discovered, that case stands alone among all the cases relied on by counsel for plaintiff in error where the question at bar was discussed, the authorities examined, and the rule announced for which he contends; and, as seen, it was there held only in a qualified way.

The case of *Trevett* v. *Prison Association,* 98 Va., 332, 36 S. E., 373, 50 L. R. A., 564, 81 Am. St. Rep., 727, cited by him, does not raise the question now being considered, in that it was held that the defendant in error, on the facts alleged in the declaration and admitted by the demurrer, was liable for the pollution of a stream to the injury of the lower riparian owner. The objection there made by the demurrer was that, upon the averments of the declaration, the defendant was a governmental agent of the State, and within the saving of *Maia's Adm'r* v. *Directors of Eastern State Hospital,* 97 Pa. 507, 34 S. E., 617, 47 L. R. A., 577, which in-

volved the liability of such an agency for the negligence of its servants. This objection, however, was not sustained; the court holding that the demurrant was in no sense an arm or agency of the State, but that it was in fact and in law a voluntary association of individuals, who procured a charter for certain specific objects, by the terms of which it was "invested with all the powers, rights, and privileges conferred, and made subject to all the responsibility, regulations, and restrictions imposed, by the common law and the statutes of the commonwealth upon corporate bodies."

The same may be said as to the two cases of *Davis* v. *Congregational Church,* 129 Mass., 367, 37 Am. Rep., 368, and *Stewart* v. *Harvard College,* 12 Allen (Mass.), 58. The decision in the first of these cases was based, among others, on the authority of *Sweeney* v. *Old Colony Railroad,* 10 Allen (Mass.), 368, 87 Am. Dec., 644, in which was applied the principle that the owner of real estate, who invites another upon it without warning as to its dangerous condition, is liable for an injury to the guest sustained therefrom.

In the case of *Stewart* v. *Harvard College,* supra, the same principle was applied. As to the first of these cases, we think it may be assumed that the supreme court of Massachusetts did not suppose it was announcing a rule at variance with the one laid down in *Mc-Donald* v. *Massachusetts General Hospital,* supra, as that case is not referred to in the opinion; but its doc-

trine was reaffirmed in *Benton* v. *Boston City Hospital Trustees,* supra.

It is alleged that Judge Thompson, in his late work on Corporations, volume 5, sections 6364-6366, expresses a preference for the Rhode Island doctrine, as announced in the *Glavin Case,* to the Massachusetts doctrine, (which is in effect that of the *Feoffees of Heriot's Hospital* as laid down in the two cases from that State referred to last above, and insists that the sounder view is that which holds corporations organized for charity liable for injuries resulting from the negligence of their agents and authorizes an appropriation of their funds to the satisfaction of judgments for damages in such cases. In other words, he would place such corporations, in actions of tort and as to the satisfaction of judgments obtained therein out of corporate funds, upon the same plane with municipal corporations and railroads, either acting directly or by receivers duly appointed by the court, in the management of railway property. We are unable to agree with this learned author, and are satisfied that the principle which subjects these secular corporations and their property to liability for the acts of their agents should not be applied to an eleemosynary institution, whose entire funds have been donated with the distinct understanding that they shall be applied alone to charitable uses. However without pursuing the discussion further, we are satisfied, as is said by the author of the note to *Williamson* v. *Industrial School* (Ky.), 23 L. R. A., 200, that the clear weight of

authority is in favor of the doctrine of *Feoffees of Heriot's Hospital*, "which exempts a charitable institution from liability for the negligence of its officers or agents," and we will add trustees or managers; nor is this doctrine qualified in the present case by the fact that the corporation administering the trust required its pupils to pay tuition and board. *Andrews* v. *Andrews*, 110 Ill., 223; *Parks* v. *Northwestern University*, supra.

The suggestion that this rule of exemption should not be applied in the case at bar, inasmuch as the charter of the defendant in error provides that the corporation "may sue and be sued," we do not think sound. There is abundant scope for the operation of this clause without overturning the principle herein announced, based as it is upon well-considered authority, and, as we think, on sound public policy.

It is to be noted that this is not a case of *damnum absque injuria*, for there is no doubt that for the negligence of the managers of this institution in failing to erect fire escapes, this negligence contributing to the injury of plaintiff in error, an action could have been maintained against them. That they might be less pecuniarily able to respond in damages than the corporation is beside the question.

It results that the judgment of the court below is affirmed.