WALTER S. GOODALE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78456.    Promulgated June 17, 1926.

*Walter S. Goodale* pro se.
*Paul A. Sebastian, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This is a proceeding for the redetermination of a deficiency of $474.15 for the calendar year 1932. The issue is whether the respondent erred in including in taxable income the compensation received by the petitioner as superintendent of the Buffalo City Hospital, it being alleged that said hospital is a branch of the city government of Buffalo, New York, and as such is an essential governmental function.

The petitioner is a physician employed as superintendent of the Buffalo City Hospital, hereinafter referred to as Hospital. The Hospital was organized in or about 1918, pursuant to the provisions of section 126, *et sequentes*, of the General Municipal Law, Book 23, McKinney's Consolidated Laws of New York. It was erected by the municipality by floating a bond issue, and the construction and equipment represent an investment of approximately $4,000,000. The petitioner was appointed superintendent of the Hospital when it

---

[1] This dissent was noted during Mr. Seawell's term of office.

first opened. During the taxable year petitioner was an employee, through the city of Buffalo, of the State of New York.

The Hospital is a general public hospital having all facilities necessary for the treatment of all diseases and illnesses. It accepts patients regardless of their financial ability to pay. The petitioner, as superintendent of the Hospital, is charged by statute with investigating the financial responsibility of each patient. The maximum charge to any patient for any services rendered by the Hospital is $3.50 per day. This maximum charge is an arbitrary figure determined by the Hospital's board of managers and represents the estimated average daily cost of operating, per patient, $2.65 to $2.74 per day, plus depreciation on plant and equipment, and plus interest on outstanding bonds. No amount of profit is included in the $3.50 maximum charge. Patients accepted by the Hospital, who come from Erie County and are a charge on the county, instead of the municipality of Buffalo, are charged at the rate of $2 per day. This sum is also fixed by the board of managers and accepted by the Hospital. Patients who are financially able to pay a portion of their hospital bill are charged in proportion to their ability to pay, but no patient is charged over $3.50 per day. A patient unable to pay is cared for free of charge.

All funds received by the Hospital from the care of patients were deposited with the city treasurer, as the Hospital had no right to expend its receipts. The Hospital's expenditures were kept strictly within the budgetary allowance prepared annually by petitioner, as superintendent, and submitted to the mayor and city council for approval or modification.

During the fiscal years ending July 1931 and 1932, the Buffalo City Hospital had a total income of $281,662.25 and $252,553.29, respectively. Approximately 57 percent of this income was derived from the care of county patients. Payments by the county to the Hospital for the care of county patients were made irregularly, the county sometimes being current, and other times as much as three years behind.

The percentages of paying, part-paying, and free cases admitted to the Hospital are as follows:

| | |
|---|---|
| Paying patients (paying $3.50) | 2.92% |
| Part-pay patients (less than $3.50) | 6.60% |
| Erie County patients ($2 flat rate) | 21.68% |
| New York State patient ($2 flat rate) | 2.47% |
| Free patients | 66.31% |

In determining the deficiency respondent increased petitioner's income by $7,625.59, and denied petitioner's claim that salary and maintenance received from the Hospital were exempt from Federal income taxation.

The statutory authority for the establishment of public general hospitals in the State of New York by any city, town, or village is found in section 126, *et sequentes*, General Municipal Law, being chapter 558, Laws of 1910, McKinney's Consolidated Laws of New York, which was amended by chapter 265, Laws of 1922, so as to authorize counties of the state to establish public general hospitals. The governing board of the county, city, town, or village had the power "to cause to be assessed, levied and collected" the necessary sums for lands, buildings, equipment improvements, maintenance, and all other necessary expenditures for the hospital. Section 127 provided for a board of managers, serving without compensation, and further provided that "The treasurer of the county, town, city or village by which the hospital is maintained shall be treasurer of the hospital." Section 128 provided for the appointment of a superintendent of the hospital by the board of managers and set forth their general powers and duties. Section 129, which sets forth the general powers and duties of the superintendent, provides, in part, as follows:

The superintendent shall be the chief executive officer of the hospital and, subject to the by-laws, rules and regulations thereof, and to the general control of the board of managers, shall:

\*     \*     \*     \*     \*     \*     \*

(5) Receive into the hospital, under the rules established by the board of managers, any person in the county, town, city or village who is sick or maimed or injured and who is in need of hospital care, irrespective of whether such person is able to pay for his care or not; and may also receive persons from without the county, town, city or village, provided there is a vacancy in the hospital, and provided the reception of such person does not interfere with the proper care and treatment of persons received from the county, town, city or village.

Section 129 further provides that receipts and collections of the hospital shall be transmitted to the treasurer of the county, town, city, or village by which the hospital is maintained.

Section 130, as amended, reads as follows:

Whenever a patient shall have been admitted to such hospital, the superintendent shall cause to be made such inquiry as he may deem necessary, relative to the ability of such patient, or of the relatives of such patient legally liable for his support, to pay for his care and treatment. If he find that such patient, or said relatives, are able to pay for his care and treatment in whole or in part, an order shall be made by the superintendent directing such patient, or said relatives, to pay to the treasurer of such hospital for the support of such patient a specified sum per week, in proportion to their financial ability but *such sum shall not exceed the actual cost of maintenance.* The superintendent shall have the same power and authority to collect such sums from the patient, or his relatives legally liable for his support, as is possessed by an overseer of the poor in like circumstances. If the superintendent find that such patient, or his said relatives, are not able to pay either in whole or in part, for his care and treatment in such hospital, *the unpaid*

*cost of his maintenance shall become a charge upon the county, town, city or village by which the hospital is maintained;* provided, however, that in case such patient is not a resident of said county, town, city or village, the cost of his maintenance shall be a charge upon the civil division of the state upon which he would be a charge as a poor person. No employee of such hospital shall accept from any patient thereof any fee, payment or gratuity whatsoever for his service. [Emphasis supplied.]

It is petitioner's contention that these statutory provisions, together with the public health law, the sanitary code, the public welfare law, and the rules and regulations of the different state authorities, thereunder, constitute the Hospital an essential governmental function carried on by the municipality of Buffalo under its charter. The respondent denies that the operation and maintenance of the Hospital are an essential governmental function, but asserts that if this be true, nevertheless, petitioner is entitled to no relief because this Hospital was organized, operated, and conducted in such a manner that it was proprietary rather than governmental.

In support of his contention that the Hospital here is not an essential governmental function respondent relies on the decision of the Court of Claims in *Liggett & Myers Tobacco Co.* v. *United States*, 13 Fed. Supp. 143, from which he quotes at length. The facts are that the Commonwealth of Massachusetts owned and operated a public hospital known as the Boston State Hospital. In treating patients the State Hospital distributed manufactured tobacco free of charge. The question was whether the Federal tax on this tobacco is valid against the state. The court said: "We think it obvious that in establishing and maintaining a hospital the State of Massachusetts is not exercising any sovereign power." The Federal Government's right to the tax was sustained.

Opposed to this decision is *Mallory* v. *White*, 8 Fed. Supp. 989, where the Federal District Court for Massachusetts held the Boston City Hospital was an instrumentality of the municipal corporation, and that the services of its pathologist in chief were rendered in connection with an essential governmental function, thereby exempting his compensation from Federal taxation. The court's discussion of the Massachusetts cases and the law pertinent to its decision are, in our opinion, applicable here. The court's decision reads in part as follows:

It is agreed that the city of Boston is a municipal corporation and a political subdivision of the state. The first question, therefore, is whether the Boston City Hospital is an instrumentality of the City of Boston, within the meaning of the decisions.

The statutes require the maintenance by municipalities of hospitals such as the facts show the Boston City Hospital to be. See chapter 174, Acts of Massachusetts of 1880; chapter 111, General Laws of Massachusetts (Ter. Ed.). This hospital was established and is maintained "for the reception of persons who by misfortune or poverty may require relief during temporary sickness,"

and the total amount collected from nonsettlement cases and paying patients during the year 1929 was only 4.1 per cent. of the expenses for that year. Providing hospital care for dependent poor and accidentally ill, the prevention and cure of contagious diseases, and the care of the public health are essential governmental functions as opposed to proprietary functions. The underlying test for determining if work being carried on by a municipality is governmental or proprietary is, as stated in *Bolster* v. *City of Lawrence*, 225 Mass. 387, at page 390, 114 N. E. 722, 724, L. R. A. 1917B, 1285, "whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit." In the same case it is said, "Although such institutions may receive pay patients their public character is not lost thereby. * * * " See, also *Benton* v. *Boston City Hospital*, 140 Mass. 13, at page 17, 1 N. E. 836, 54 Am. Rep. 436, and *Curran* v. *Boston*, 151 Mass. 505, 24 N. E. 781. 8 L. R. A. 243, 21 Am. St. Rep. 465. In *County of Essex* v. *Newburyport*, 254 Mass. 232, at page 236, 150 N. E. 234, 236, the court said: "No argument is required to demonstrate that the establishment of the hospital * * * was a public purpose. * * * The hospital stands on as firm footing in this respect as do schools, roads, bridges, and other confessedly governmental functions. * * * " See also, *Flint* v. *Stone Tracy Company*, 220 U. S. 107, at page 172, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Sacramento County* v. *Chambers*, 33 Cal. App. 142, 164 P. 613; Cooley on Taxation, p. 204; Cumulative Bulletin XI–2, Internal Revenue Bureau, July–December 1932, p. 113, XI–38–5698, G. C. M. 10814.

The plaintiff's services having been rendered in connection with an essential governmental function, his salary, paid by the city, is exempt from taxation by the federal government if he was an officer or employee of the city of Boston. Regulations 74, art. 643; *Burges* v. *Commissioner* (C. C. A.) 69 F. (2d) 609.

The similarity between the facts of the instant case and those obtaining in the *Mallory* case is quite obvious. The major difference is in the percentage of paying patients, which is the basis for respondent's second contention that, in any event, the Hospital here exercised proprietary functions, and therefore, petitioner's compensation is not immune. Much of the force of respondent's argument is lost, however, when it is noted that county and state cases are a charge on the taxpayers too, so that, while free cases constituted 66 percent of the total, only 2.9 percent pay the maximum charge, no part of which is profit; 6.6 percent pay a portion of their cost of hospitalization; while the taxpayers pay for the remainder. In other words, over 90 percent of the patients hospitalized were provided for *in toto* by taxes on the community from whence they came.

The superintendent had no discretion regarding the acceptance of patients, because the statute made him the chief executive officer and stated that he "shall receive into the hospital, * * * *any person* in the county, town, city or village who is *sick* or *maimed* or *injured* and who is in need of hospital care, *irrespective of whether such person is able to pay for his care or not;* * * *.*" (Emphasis supplied.) This provision is mandatory upon the superintendent, and

while "indigent poor", "paupers", and/or other descriptive terms of the needy are not used, the provision "irrespective of whether such person is able to pay for his care or not" is sufficiently comprehensive, and was, in our opinion, obviously intended to include the poor, the indigent, the afflicted, and the paupers. We think the state statute was for the common good of all, was designed to protect the public health, which is of first importance to the body politic, and was as necessary to the welfare of society as public schools and other matters of general public concern.

In *G. Ridgely Sappington*, 25 B. T. A. 1385, after a thorough discussion of the basic principles and legal philosophy of the question, we held that the University of Maryland was an instrumentality of the state, and its functions were not proprietary. Here, we believe the evidence properly before us is sufficient to establish that this hospital is an instrumentality of a political subdivision of the state, engaged in an essential governmental function. This being true, and it being conceded by respondent that petitioner was a state employee, it follows that his compensation is exempt from Federal taxation.

Reviewed by the Board.

*Decision will be entered for the petitioner.*