(6 Misc. Rep. 281.)

HAAS v. MISSIONARY SOC. OF THE MOST HOLY REDEEMER.

(Common Pleas of New York City and County, Special Term. December, 1893.)

LIABILITY FOR NEGLIGENCE OF EMPLOYES—RELIGIOUS CORPORATIONS.

A religious corporation organized under Laws 1876, c. 176, which provides (section 1) that it shall not be lawful to divert the property or revenues to any purpose except the support and maintenance of the object connected with the church or denomination to which such corporation shall belong, is not liable for the negligence of an employe, where due care was used in his selection.

Action by Margaret Haas against the Missionary Society of the Most Holy Redeemer. Plaintiff moves to open a default taken at trial term. Denied.

Herman H. Shook, for the motion.
Henry Schmitt, opposed.

BOOKSTAVER, J. The facts presented, I think, abundantly excuse the absence of the plaintiff's attorney when this case was called, and I would have no hesitation in opening it upon reasonable terms, were it not for the very grave question presented upon the motion as to the right of the plaintiff to recover, in any event. It is admitted by the pleadings that the "defendant is a religious corporation duly incorporated under the laws of the state of New York," and the question is whether, under the laws of this state, the plaintiff can maintain an action to recover damages for injuries received by reason of the negligence of an employe of the defendant; there being no allegation in the complaint that such employe was not fully qualified for the work he was engaged to perform, or that there had been any negligence on the part of the officers of the corporation in his selection. Chapter 176 of the Laws of 1876 (section 1) provides:

"The rector, warden and vestrymen, or the trustees, consistory, or session of any church, congregation or religious society, incorporated under any of the laws of this state, shall administer the temporalities thereof, and hold and apply the estate and property belonging thereto, and the revenues of the same, for the benefit of such corporation, according to the rules and usages of the church or denomination to which said corporation shall belong, and it shall not be lawful to divert such estate and property or revenue to any purpose except the support and maintenance of any church or religious or benevolent institution or object connected with the church or denomination to which such corporation shall belong."

As the title indicates, the organization is a missionary one, and there is no allegation, of any kind, that it has any fund other than that for the maintenance and support of the charity. It has no capital stock, no financial return is made to its members, and, as far as appears, its officers serve without remuneration. Under such circumstances, it is merely an instrument of law to accomplish a certain object. The donors of its fund have selected it as a trustee for this object, and the estate, property, and revenue in its hands are impressed with the trust for that purpose, and it does not seem to me to be lawful to divert them to any other; and consequently

none of these funds can be diverted to the payment of damages for a personal injury received by a stranger at the hands of an agent not shown to be unworthy or unfit for the purposes for which he was employed.   In Hospital v. Ross, 12 Clark & F. 507, Lord Cottenham said:

"He [the plaintiff] does not, in terms, pray for the payment of damages from the trust funds.  But still, as the summons is constituted, he cannot receive damages, should he receive them at all, except from those funds; and it has been, throughout the proceedings, understood that, if there are to be any damages at all, they must be paid out of the trust fund.  The question, then, comes to this: Whether, by the law of Scotland, a person who claims damages from those who are managers of a trust fund, in respect of their management of that fund, can make it liable in payment.  It is obvious that it would be a direct violation, in all cases, of the purposes of a trust, if this could be done, for there is not any person who ever created a trust fund that provided for the payment out of it of damages to be recovered from those who had the management of the fund.  No such provision has been made, either.  There is a trust, and there are persons intended to manage it for those who are to be the objects of the charity.  To give damages out of a trust fund would not be to apply it to those objects whom the author of the trust fund had in view, and would be to divert it to a completely different purpose.  * * *  Finding, as I do, that there is no direct authority in the law of Scotland for laying damages, in a case of this sort, to be taken out of the trust fund, (a matter very clearly settled in the case of Duncan v. Findlater, 6 Clark & F. 894, McLean & R. 911,) and feeling convinced that so to allow them would be in itself a breach of duty, I am of the opinion that it is the duty of this house to discontinue the practice, and to decide the case on a ground so perfectly clear and free from doubt as this is."

Lord Brougham, in the same case, entirely concurred with Lord Cottenham, and added:

"The charge is that the governors of the hospital have illegally and improperly done the act in question, and because the trustees have violated the statute, therefore, what?  Not that they themselves shall pay the damages, but that the trust fund which they administer shall be made answerable for their misconduct."

And Lord Campbell is even more emphatic, saying:

"Damages are to be paid from the pocket of the wrongdoer, not from a trust fund."

This decision was followed in McDonald v. Hospital, 120 Mass. 432, (decided June, 1876;) Devens, J., in rendering the opinion of the court, saying:

"The grounds upon which the plaintiff seeks to maintain this action are that the defendant undertook, through its agents and servants, to treat his broken leg, and that this was done so negligently and unskillfully that he was permanently injured.  * * *  We are satisfied that for other reasons the plaintiff is not entitled to recover, upon the case made by him.  The defendant was a public charitable institution under the laws of the commonwealth.  The object for which it was incorporated was to provide a general hospital for sick and insane persons.  Its funds are derived from grants and donations made by the commonwealth, from profits which it is entitled to receive from the Hospital Life Insurance Company, and other companies incorporated in the commonwealth of Massachusetts, and from grants, devises, donations, bequests, and subscriptions of benevolent persons, and from the board of paying patients.  * * *  The corporation had no capital stock, no provision for making dividends or profits; and, whatever it may receive from any source, it holds in trust, to be devoted to the object of

sustaining the hospital, and increasing its benefits to the public, by extending or improving its accommodations, and diminishing its expenses. Its funds are derived mainly from public and private charity. Its affairs are conducted for a great public purpose,—that of ministering to the comfort of the sick,—without any expectation on the part of those immediately interested in the corporation of receiving any compensation which will inure to their own benefit, and without any right to receive any such compensation. This establishes its character as a public charity. Jackson v. Phillips, 14 Allen, 539. The fact that its funds are supplemented by such amounts as it may receive from those who are able to pay wholly or entirely for the accommodation they may receive does not render it the less a public charity. All sums thus received are held upon the same trust as those which are the gifts of pure benevolence. Gooch v. Association, 109 Mass. 558. * * * It has no funds which can be charged with any judgment which he might recover, except those which are held subject to the trust of maintaining the hospital."

In Benton v. Hospital, 140 Mass. 13, 1 N. E. 836, it was held that an action for damages could not be maintained, by a person who entered a hospital building on business, for personal injuries occasioned by reason of the unsafe condition of the covering of stairs, although such condition was caused by the negligence of the superintendent of the hospital. As far as I am aware, these decisions all proceeded without any statutory provision expressly prohibiting the diversion of the fund, as is the law in this state. In Fire Ins. Patrol v. Boyd, 120 Pa. St. 624, 15 Atl. 553, Judge Paxson, delivering the opinion of the supreme court, (at page 647, 120 Pa. St., and page 557, 15 Atl.,) said:

"The Insurance Patrol is a public charity. It has no property or funds which have not been contributed for the purposes of charity; and it would be against all law and equity to take those funds, so contributed for a special charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agent or servant of the patrol. It would be carrying the doctrine of respondeat superior to an unreasonable and dangerous length. The doctrine is, at best, as I have once before observed, a hard rule. I trust and believe it will never be extended to the sweeping away of public charities; to the misapplication of funds specially contributed for a public charitable purpose to objects not contemplated by the donors. I think it may be safely assumed that private trustees, having the control of money contributed for a specific charity, could not, in case of a tort committed by one of their number, apply the fund in their hands to the payment of a judgment recovered therefor. A public charity, whether incorporated or not, is but a trustee, and is bound to supply its funds in furtherance of charity, and not otherwise. This doctrine is hoary with antiquity, and prevails alike in this country and in England, where it originated as early as the reign of Edward V., and it was announced in the Year Book of that period."

He then quotes the decision before noted, and adds many other authorities in the state of Pennsylvania and elsewhere, and continues:

"I am glad to be able to say that no state in this country, or in the world, has upheld the sacredness of trusts with a firmer hand than the state of Pennsylvania. Not only is a trustee for a public or private use not permitted to misapply the trust funds committed to his care, but if he converts them to his own use the law punishes him as a thief. How much better than a thief would be the law itself, were it to apply the trust funds contributed for a charitable object to pay for injuries resulting from the torts or negligence of the trustees?"

The same rule of law prevails in Maryland. Perry v. House of Refuge, 63 Md. 20. In that case it was held that the House of

Refuge, being a corporation instituted for charitable purposes, could not be made liable in an action for damages for an assault committed by one of its officers on an inmate of the institution. Judge Yellott, in rendering the opinion of the court, said:

"Funds are contributed by individuals impelled by philanthropic motives, and donations are obtained from the municipal and state treasuries. These are the funds of the institution, controlled by managers, not for their own profit or benefit, but solely for the charitable purposes designated by the organic law. This, then, is an institution resting on an eleemosynary foundation."

And, after quoting some of the authorities hereinbefore noticed, proceeds:

"In the absence of any decisions in Maryland, we are constrained to adopt the exposition of principle by these eminent English jurists, and are thus led to the determination that damages cannot be recovered from a fund held in trust for charitable purposes. In the language of Lord Campbell, the wrong-doer must pay from his own pocket."

I am informed that this precise question was raised before Judge Pratt in Kinsella v. Rector, etc., in the supreme court, Kings county, in an action to recover damages of the rector, etc., for the negligence of an employe, which was dismissed by the learned judge without an opinion. In the case of Pryor v. Hospital, 15 N. Y. Supp. 621, note, Judge Lawrence said:

"It is well settled that a corporation established for the maintenance of a public charitable hospital, which has exercised due care in the selection of its agents, is not liable for injury to a patient, caused by their negligence, [citing cases.] In the complaint in this action there is no allegation that the defendant failed to exercise due care in the selection of its house surgeon, or that he was not perfectly competent and skillful in his profession. It follows, therefore, that there should be judgment for the defendant upon the demurrer."

In Maxmilian v. Mayor, etc., 62 N. Y. 160, it was held that the city corporation was not liable for the negligence of an employe of the commissioners in driving an ambulance wagon belonging to the city, which struck, and caused the death of, the plaintiff's intestate. And in this court it was lately held, in an action brought against the New York Hospital, that it could not be maintained against the corporation, but the cause of action, if any, lay directly against the surgeon.

It is true that most of the cases I have before cited have arisen in the cases of hospitals, or other charities of that character. But all of them proceeded upon the ground that it would be a diversion of the trust funds, if they could be compelled to pay damages out of them; and in this respect, I think, religious corporations are upon the same footing as hospitals, or other charitable institutions. The objects of the organization are certainly as worthy, and the trusts as sacred, as in any other class of cases. And, indeed, in the case of People v. Barber, 42 Hun, 27, Mr. Justice Bradley said:

"The policy of this state, as displayed by the laws providing for the exemption from taxation of the property of colleges, incorporated academies, and other seminaries of learning, has been, from an early date, to encourage, foster, and protect corporate institutions of religious and literary character,

because the religious, moral, and intellectual culture afforded by them were deemed, as in fact they are, beneficial to the public, necessary to the advancement of civilization and to the promotion of the welfare of society."

In 2 Lawson, Rights, Rem. & Pr. § 625, it is said:

"Gifts for charitable purposes are classified by Mr. Bispham: '* * * (3) Gifts for religious purposes, as missionary and Bible societies, charities for foreign missions,' etc.; citing numerous cases."

See, also, Attorney General v. Bishop of Chester, 1 Brown Ch. 444; Society for Prop. of Gospel v. Attorney General, 3 Russ. 142; Sinnett v. Herbert, 7 Ch. App. 232; Cumming v. Trustees, 64 Ga. 105; Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336; Jackson v. Phillips, supra.

I think, therefore, that such an action as this cannot be maintained against a religious corporation. It is true that there is a learned discussion of this whole subject in Glavin v. Hospital, 12 R. I. 411, where a conclusion, different from that held in Massachusetts, Pennsylvania, and Maryland, has been arrived at. But the learned judges who take part in that discussion differ as to the grounds on which they base the right of recovery; Chief Judge Durfee apparently basing it upon the rule of respondeat superior, which, as before noted, Judge Paxson says, with great justice, is a hard rule, and should not be extended. Indeed, I doubt whether, if the question were now opened for consideration in this state, it would be adopted to the extent it now is, because, from the nature of the case, a master will, as a general rule, suffer far more from the negligence of servants than a stranger can. It is his policy, as far as practicable, to secure competent and careful employes; and it is a hard rule which makes him responsible for the negligent acts of his servants, when he suffers more from such negligence than the person injured does. It does not seem to me to be right to make him bear his own loss, and the loss of the injured party, while the real wrongdoer practically goes free. This rule is generally placed upon the ground of public policy; the theory, I suppose, being that thereby the master will be more careful in the selection of his servants. But, as before stated, his self-interest would lead him to do this, regardless of consequences to others. Surely, allowing the wrongdoer to go free, while one comparatively innocent suffers, does not tend to diminish the number of accident cases, and I think public policy requires the adoption of such a rule as would tend to diminish such cases. Would it not be better to make the wrongdoer, in all cases, primarily to suffer, even to the extent of being incarcerated, if he does not satisfy the wrong done by him? Judge Potter, in the case last cited, puts his opinion, apparently, upon the ground that all corporations must act through agents, and that those agents are in fact a part of the corporations, and hence, when an injury is done by them, it is done by the corporation. But he does not, in his opinion, carefully distinguish between common carriers, religious corporations, and private enterprises, even going so far as to say, after noticing the care required of a railroad company towards its passengers, that there seems to him to be "a stronger reason for the application of the principle in the present case, [the

hospital,] because, although it may be the habit of railroad officials to give their friends free passages, that is not the business for which the corporation was formed, whereas, in the present case, gratuitous treatment is one of the most important objects—almost the principal object—for which the defendant corporation was created," and follows this out by a view of the law which is not at all sustained in this state. But it is unnecessary to consider that case further, because it met with such disapproval in the state of Rhode Island that, at the earliest possible moment after the convening of the next legislature, the decision was, in effect, overruled by an act of that body, which provides, (Laws R. I. 1880, c. 162:)

"Section 1. No hospital incorporated by the general assembly of this state, sustained in whole or in part by charitable contributions or endowments, shall be liable for the neglect, carelessness, want of skill, or for the malicious acts of any of its officers, agents or employees, in the management of, or in the care or treatment of, any of the patients or inmates of such hospital. But nothing herein contained shall be so construed as to impair any remedy, under existing laws, which any person may have against any officer, agent or employee of any such hospital for any wrongful act or omission in the course of his official conduct or employment."

If I am wrong in the views I have expressed, the matter may be more conveniently and expeditiously determined by an appeal from an order denying the motion than in any other way; and the motion is therefore denied, with $10 costs to the defendant.