BRUCE *v.* CENTRAL METHODIST EPISCOPAL CHURCH.

1. CHARITIES—CHARITABLE TRUSTS—CHURCH FUNDS.
> The funds of a church, not held subject to any express trust created by their donor, but which may not be devoted to the use of any other religious denomination or to other than religious purposes, constitute a charitable trust, though they are to be used, not for the benefit of an indefinite number of persons, but for the benefit of those coming within the influence of the particular church.

2. SAME—LIABILITY FOR TORTS.
> Corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such tort.

3. Same—Religious Societies — Personal Injuries — Liability. A Methodist Episcopal Church, incorporated under Act No. 11, Pub. Acts 1899, is liable to an employé of a contractor engaged in decorating the church building, for injuries sustained by reason of the breaking of defective scaffolding furnished by the agents of the church.

Case made from Kent; Wolcott, J. Submitted April 20, 1906. (Docket No. 34.) Decided March 5, 1907.

Case by Albin Bruce against the Central Methodist Episcopal Church for personal injuries. There was an order sustaining a demurrer to the declaration, and plaintiff appeals. Reversed.

*Carroll, Kirwin & Hollway,* for appellant.

*D. C. Sheldon* (*N. O. Griswold,* of counsel), for appellee.

Counsel in this case have assumed, and the court assumes, that defendant is incorporated under the provisions of Act No. 11, Pub. Acts 1899, entitled "An act for the organization of corporate Methodist Episcopal Churches." It is located at the city of Belding, in this State. It is, by the terms of the act (§ 5.)—

"Subject in all matters of church government and ecclesiastical polity to the discipline, usage and ministerial appointments of the Methodist Episcopal Church in the United States of America, as from time to time authorized and declared by the general conference of said church and the annual conference within whose bounds such corporation may be situated."

Other provisions of the act are (§ 7):

"It may hold so much land as may be needful for the proper purposes of said church and its parsonage. * * * It may sell, mortgage and dispose of its personal property; and may mortgage and incumber its real estate, but not for the current expenses of the church."

"Sec. 9. Whenever it shall become necessary, for the payment of debts or with a view of reinvestment, to make

a sale of any real estate belonging to said church, the quarterly conference of said church may, by a vote of a majority of all the members of said quarterly conference and the consent of the pastor of said church and of the presiding elder of the district of which such church may or shall be a part, authorize a sale of said real estate by the trustees of said church, with such limitations and restrictions as the quarterly conference may judge necessary and impose; and the trustees of said church, when so authorized, may sell and convey said property, and with the proceeds of such sale pay the debts of such corporation, or reinvest the said proceeds by the purchase or improvement of other property for the same uses and deeded to the corporation in the same manner as provided in section seven of this act, as said trustees may be directed by the quarterly conference: *Provided*, That in all cases the proceeds of such sale, after the payment of debts, if any, if not applied to the purchase or improvement of other property as aforesaid, shall be held by such corporation subject to the order of the annual conference within the bounds of which such property is located. In all cases where property belonging to any church incorporated under the provisions of this act has been abandoned, and is no longer used for the purpose for which said property was acquired, or said corporation has dissolved, or has ceased to exist, the title to the said property belonging to said corporation shall pass to the annual conference within the bounds of which said property is located; and said annual conference may, by such officer or committee as said annual conference may designate for that purpose, apply to the circuit court in chancery, for the county in which such property may be, for license to sell the same; and such license may be granted by said court after such notice of said application as the court may direct; and thereupon said property may be sold, and the proceeds of such sale applied or used as said annual conference may direct."

"Sec. 6. The temporalities of said church shall be managed by a board of trustees, consisting of not less than three nor more than nine members, to be elected by said corporation from its members. *   *   *"

The declaration of the plaintiff sets out, with proper allegations of duty and breach thereof, that defendant is owner and possessed of certain real estate, upon which it was building a church, to be used and occupied for the

purposes of its organization, and had caused to be erected a scaffolding or stage therein for the use of employés of defendant and others engaged in the work of erecting the church; that plaintiff was employed by a contractor who had contracted with defendant to do the tinting of the ceiling and interior walls of the church, and in such service, while properly using this stage, he was, because of the defective condition thereof, thrown from the scaffold or stage to the floor of the church, sustaining severe injuries. In the second count of the declaration it is alleged that the scaffold was erected by defendant, and, further, that:

"The said defendant had entered into a contract or agreement for the tinting and kalsomining the interior walls and ceiling of said church with one Alfred Wixstrom, in whose service and employ the said plaintiff then was, and, as a part of said contract and agreement, said defendant agreed that said staging or scaffold was safe and suitable for the purposes for which it was used, as aforesaid, and that it would keep and maintain the same in such safe and suitable condition for such user."

It is contended that, however other questions which are discussed may be answered, under this count, the contract is the foundation of the action, and the defendant therefore liable. The defendant demurred to the declaration, and for grounds of demurrer set out:

"1. It is not shown by said declaration under what particular statute the defendant is incorporated, nor the purpose of its incorporation, except so far as the same may be inferred from its corporate name.

"2. It is not shown by said declaration that the defendant owed to the. said plaintiff any duty, the neglect of which was the cause of the plaintiff's injuries, as therein claimed.

"3. It appears from said declaration that the plaintiff was not in any way or manner in the employ of the defendant, or that the relation of master and servant existed between them at the time of the plaintiff's alleged injuries.

"4. It appears from such declaration that the defendant is a corporation organized for the purposes of public

charity, and is not liable for any neglect or default of any agent or servant having the care or custody of its property.

"5. That the said defendant is a corporation organized for the purposes of public charity and the teaching of religion, and as such is not liable for the act or neglect of any trustee or officer of such corporation; such corporation not being organized for the purpose of business, gain or reward.

"6. Said declaration is otherwise uncertain and insufficient in law, and does not state a cause of action against the defendant."

The demurrer was sustained.

OSTRANDER, J. (*after stating the facts*). The course which the argument has taken makes it unnecessary to notice the first, third, and last grounds of demurrer; it is to the second, fourth, and fifth grounds that the attention of the court has been directed.

Counsel for both parties recognize the distinction between an incorporated religious society and the church or spiritual body with which it may be affiliated, or according to the creed or discipline of which it may conduct its religious services and admit to spiritual fellowship. *Hardin* v. *Baptist Church*, 51 Mich. 137; *Wilson* v. *Livingstone*, 99 Mich. 594; *Methodist Episcopal Church* v. *Clark*, 41 Mich. 730. Some facts are stated and relied upon in the opinions in the cases cited which cannot now be asserted, since by sections 1 and 4 of the act in question it is members of the Methodist Episcopal Church only who may organize and procure incorporation, and it is those persons originally signing the articles of association, and fellow members of the church, and all who may thereafter become members of said church, according to the discipline, rules, and usages of the Methodist Episcopal Church, who become and are "a body politic or corporation, * * * with all the powers, rights, and privileges appertaining to religious corporations by the laws of this State." It cannot, therefore, be now said, as was said in *Wilson* v. *Livingstone*, supra:

"It is observable that it is not association and worship with the denominational body that give character to the member and make him a voter, but it is the corporation or society existing under the articles to which he must contribute and with which he must worship,"

—since it is evident that, under the act in question, spiritual affiliation is a condition to corporate membership. There is ground for saying that, if the act under which defendant is organized is given effect according to its terms and evident import, the property of the corporation cannot, even by the assent of all the members of the corporation, be devoted to the uses or purposes of any other religious denomination. Compare Act No. 110, Pub. Acts 1895; Act No. 209, Pub. Acts 1897, and Act No. 11, Pub. Acts 1899. See *Graham* v. *Muskegon County Clerk*, 116 Mich. 571, and cases cited, supra. See, also, *Watkins* v. *Wilcox*, 66 N. Y. 654; *Robertson* v. *Bullions*, 11 N. Y. 243; *Petty* v. *Tooker*, 21 N. Y. 267; *Isham* v. *Presbyterian Church*, 63 How. Prac. (N. Y.) 465. However the point may be determined, it is not, in my judgment, controlling, and such argument as I shall make will proceed upon the theory that the corporation may not devote its property to the use of any other religious denomination or to other than religious purposes.

The statute under which defendant was organized, and which is the measure of its powers and duties, does not, in terms, relieve it from liability for the torts of its officers. If it is so relieved, it must be because there is some applicable rule of the unwritten law, or some reason founded in sound public policy, which the courts are bound to apply. I assume, as the argument does, that the property of defendant was not acquired and is not held subject to any express trust created by the grantor or vendor of the property, but was acquired by purchase, in the usual way, with funds contributed by the members of the church and by others; that the money to build the church was in like manner acquired.

It is claimed by counsel for defendant that the limita-

tions, express and implied, upon the power of the corporation to dispose of corporate property, imposed by the statute and by the character and purposes of the association, have the effect of creating a trust, of which the corporation is trustee, the property of the association the trust fund, the public the beneficiary, the objects and purposes of administration charitable; that these considerations forbid all application of doctrines of corporate liability for negligent behavior of the officers and agents of defendant. Stated in terms used by counsel for defendant, the position is:

"By virtue of the provisions and limitations of said act, said defendant corporation is a public charity; said provisions and limitations being declaratory of a trust of this character."

Otherwise stated, the position of counsel, as I understand it, is that, whatever the liability of a trustee may be for his own torts, the fund in his hands, in the course of administering which the tort is committed, may not be diverted from purposes for which it was created if it is, in law, a fund held in trust for public charitable uses. In such case, it is said, the law is settled in favor of nonliability by *Downes* v. *Harper Hospital*, 101 Mich. 555 (25 L. R. A. 602), *Pepke* v. *Grace Hospital*, 130 Mich. 493, and like cases. Let us test, by the decided cases, the soundness of this position by supposing the case at bar to be the case just stated. In the hospital cases, the plaintiffs were patients who voluntarily accepted the benefits of the respective institutions. In each case, the court recognizes and asserts the rule that one accepting the benefits of such a public charity may not recover from it damages for personal injuries arising out of the acts or omissions of its servants or agents employed in dispensing the charity, provided such servants are selected with care. In *Powers* v. *Homœopathic Hospital*, 109 Fed. 294 (65 L. R. A. 372), the opinion reviews, exhaustively, the decided cases, with the conclusion that:

" One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants."

And, again:

" The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If, in their dealings with their property appropriated to charity, they create a nuisance by themselves or by their servants—if they dig pitfalls in their grounds and the like —there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected."

See, also, *Joel* v. *Woman's Hospital*, 89 Hun (N. Y.), 73; *Van Tassell* v. *Eye & Ear Hospital*, 15 N. Y. Supp. 620; *Collins* v. *Medical School & Hospital*, 59 App. Div. (N. Y.) 63; *Conner* v. *Sisters of the Poor*, 7 Ohio N. P. 514, 10 Ohio Dec. 86. There is in the reasoning of the opinion in *Hearns* v. *Waterbury Hospital*, 66 Conn. 98 (31 L. R. A. 224), in which a like conclusion is reached, something of the same idea, found in the following language:

" Such patient, who may be injured by the wrongful act of a hospital servant, is not a mere third party—a stranger to the transaction—he is rather a participant. The thing about which the servants are employed is the healing of the sick. This is set in motion, not for the benefit of the defendant, but of the public; surely those who accept the benefit, contributing also by their payments to the public enterprise (and not to the private pocket of the defendant), assist as truly as the defendant in setting the whole thing in motion."

In *Downes* v. *Harper Hospital*, Mr. Justice GRANT says: "Those voluntarily accepting the benefit of the charity accept it upon this condition"—i. e., that the will

of the donors, in creating the trust, must be respected.
It is true that in this case it is also said that "charitable
bequests cannot be thus thwarted by negligence for which
the donor is in no manner responsible," and that "the
trustees of this fund could not, by their own direct act,
divert it from the purpose for which it was given, or for
which the act of the legislature authorized the title to be
vested in the defendant," in this respect giving expression
to doctrine, which is to be found in many of the decisions
of the courts; doctrine which applies equally to the case of
one who is not and one who is a beneficiary of the institu-
tion. An examination of cases, including most of those
cited in the opinion in the *Downes Case*, shows that in
many instances the institutions were in fact State instru-
mentalities, as well as charities, and the denial of liability
might have been rested in such cases wholly, as it was in
some of them in part, upon that ground. *Benton* v.
*City Hospital*, 140 Mass. 13; *City of Richmond* v.
*Long's Adm'rs*, 17 Grat. (Va.) 375; *Murtaugh* v. *City
of St. Louis*, 44 Mo. 479; *Summers* v. *Daviess County
Com'rs*, 103 Ind. 262; *Williamson* v. *Industrial School*,
95 Ky. 251 (23 L. R. A. 200); *Perry* v. *House of Refuge*,
63 Md. 20. I am satisfied that a sound rule of decision
is laid down in *Powers* v. *Hospital* for cases of patients
who accept the benefits tendered by a charitable hospital,
and that the application of the rule supports the conclu-
sion reached in the Michigan hospital cases. Manifestly,
this rule does not aid the defendant in the case at bar.

In none of the cases cited can express authority be
found to support the proposition that, for such acts of
negligence as are charged in the declaration, there is ex-
emption from liability on the part of the corporation, and
none of the reasoning employed sustains such a proposi-
tion except that which rests upon the idea of the inviola-
bility of a trust fund or the one that immunity exists if
the employment of the property be for public charitable
purposes or upon both. I am not prepared to hold that
the only rule of nonliability has been stated in *Powers* v.

*Homœopathic Hospital,* or that, where defendant is in
fact a public charitable institution, holding its property
subject to the terms and directions of an express trust,
the doctrine of respondeat superior will be, in all cases
founded upon mere negligence of officers or agents, ap-
plied.   The English cases which have been cited do not, in
my judgment, aid in settling the matter one way or the
other.

In the case of *Mersey Docks* v. *Gibbs,* 11 H. L. Cas.
686, aside from the rule laid down for construing the va-
rious acts of parliament under which the docks' trustees
acted, it was held:   *First,* that in the particular case
the doctrine of respondeat superior had no application;
*second,* that defendant trustees were not public servants
or servants of the government, it having been before then
held, by the same tribunal, *Jones* v. *Mersey Docks,* 11 H.
L. Cas. 443, that they were liable to pay poor rates as
occupiers of the docks; and *third,* that the fact that the
trustees did not collect tolls for their own profit, but to
maintain the docks and to pay the debt contracted in
making them, made no difference, since the docks were
kept open for the public, the tolls were paid by those who
used them, payment of tolls gave the right to use, and
the duty to maintain them was cast upon the persons hav-
ing receipt of tolls and the possession and management of
the docks.   In other words, the docks corporation was
found to be a trading corporation,. and the mere fact that
tolls collected were by the act of incorporation devoted to
certain stated purposes did not relieve the trustees, though
serving gratuitously, nor the funds, from liability for in-
juries resulting from the bad condition of the docks.
The case of *Gilbert* v. *Trinity House,* L. R. 17 Q. B.
Div. 795, is to the same effect.   The decisions of English
courts in cases where boards or bodies, incorporated or
otherwise, having power to levy rates for certain purposes,
more or less public in character, are charged with negli-
gent conduct or omission, afford us quite as little aid.   I
have found no case in which it is asserted that a trust

fund, devoted to a public, charitable use,. may be used by its administrators to pay for the result of their negligent acts, committed in the course of administration, except the one here immediately referred to. It was asserted, in *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411, that a public charitable hospital is not exempt, on grounds of public policy, from liability for injuries to patients paying for their medical treatment, caused by the unskillfulness of an officer, and that the general trust fund was liable to satisfy the judgment obtained in such a case. This rule having been established by the court, the legislature changed the law with reference to such institutions as the defendant in that case.

There are decisions which affirm the general rule that trustees are liable, personally, for their own torts and those of agents appointed and controlled by them, with the further, and it would seem exceptional, rule that, in proper cases, reimbursement may be allowed them out of the trust fund. *Benett* v. *Wyndham*, 4 De Gex, F. & J. 259, is such a case. That was an action by the trustee for reimbursement. In reversing the judgment below, it was said:

" The trustee in this case appears to have meant well, to have acted with due diligence, and to have employed a proper agent to do an act the directing which to be done was within the due discharge of his duty. The agent makes a mistake, the consequences of which subject the trustee to legal liability to a third party. I am of opinion that this liability ought, as between the trustee and the estate, to be borne by the estate."

In *Parmenter* v. *Barstow*, 22 R. I. 245 (63 L. R. A. 227), servants of a trustee were chiseling stone on premises to which he held the legal title as trustee, and inflicted injury on a passer-by walking on the sidewalk. In a suit against the trustee in his official capacity, a demurrer to the declaration was interposed and was sustained. It is said, in the opinion:

"The law will not allow trust property to be impaired

or dissipated through the negligence or improvidence of trustees, nor will it permit them to create any new or additional liabilities against the same.    The beneficial interest thereof belongs to the cestuis, and it must be held intact for them."    Citing *Deschler* v. *Franklin*, 20 Ohio Cir. Ct. R. 56.

The case of *Fire Insurance Patrol* v. *Boyd*, 120 Pa. 624 (1 L. R. A. 417), is relied upon by counsel for defendant.    This case was twice before the supreme court of Pennsylvania.    *Boyd* v. *Insurance Patrol*, 113 Pa. 269. The defendant below, plaintiff in error, was incorporated, having for its object the protection of lives and property in or near burning buildings    It had no capital stock, made no profits, and derived funds solely from contributions    It worked without charge and without discriminating between persons or property owners.    It was held to be a public charity, and, in an action brought to recover for injuries received by means of the alleged carelessness of its agents, engaged at a fire, it was held to be not subject to the doctrine respondeat superior.    It is somewhat significant that, in the discussion indulged in, it is said that, in the performance of its duties, it acted—

" In aid and in ease of the municipal government in the preservation of life and property at fires.    It remains to inquire whether the doctrine of respondeat superior applies to it.    Upon this point we are free from doubt. It has been held in this State that the duty of extinguishing fires and saving property therefrom is a public duty, and the agent to whom such authority is delegated is a public agent and not liable for the negligence of its employés."

It is true that the learned judge who delivered the opinion also, later on, asserts the proposition that to use the money of defendant to pay the judgment recovered would amount to a misapplication of a trust fund.    But in the headnotes to the reported decision this doctrine is, by the reporter, ascribed to the judge and not to the court. In *Newcomb* v. *Boston Protective Department*, 151

Mass. 215 (6 L. R. A. 778), a case much like *Fire Insurance Patrol* v. *Boyd* in its facts, the supreme court of Massachusetts arrives at a precisely opposed conclusion and result, finding defendant to be a private, and not a charitable, corporation, and liable for the negligence of its servants. I apprehend the last words have not yet been said by the courts upon this subject. In my opinion, the question is not before us.

The status of defendant, in the case at bar, which has been supposed, is not its real status. The hospitals, in the Michigan cases cited, were in fact, and by the law of their creation, public charitable institutions, and their funds were, in fact, expressly trust funds. 3 Comp. Laws, §§ 8288–8296. The fact of incorporation is not essential to the reasoning, beyond this: that the act permitting incorporation of trustees of a charitable fund is an express legislative recognition of a hospital as a charitable asylum. The distinction which I seek to draw between such institutions and churches does not rest in the idea that in some sense each does not give charity—furnish what it has to bestow without pay—or in the one that a contribution to either is not charity. The distinction is none the less plain. The purpose of one is, primarily and essentially, public charity, that of the other, primarily, the grouping, for purposes of a legal entity, those of a like religious faith. The property of one is expressly trust property and is devoted to public charity; the property of the other is not trust property, and is devoted, primarily and essentially, to the purposes of the particular body which owns and occupies it. That defendant holds its property in trust for the purposes of its organization is true. Within all applicable and legally proper definitions, every corporation so holds its property. Every officer of management in every corporation is a trustee in the sense that corporate ownership of the property and corporate objects impose limitations upon his actions and involve certain rules of conduct. The relation of the trustees of defendant to the society is not that of a private trustee to

the cestui que trust.    They are trustees in the same sense, and no other, in which directors of any private corporation are trustees.    *Robertson* v. *Bullions*, 11 N. Y. 243. There is nothing in the opinions in *Allen* v. *Duffie*, 43 Mich. 1, *Methodist Episcopal Church* v. *Clark*, 41 Mich. 730, or *Hopkins* v. *Crossley*, 132 Mich. 612, which supports the contention that defendant society is a public charitable institution, as a careful reading of them will demonstrate.    That defendant and its corporate members engage, if they do, in works of charity, relieving the necessities of unfortunate persons without regard to their religious or other beliefs or connections, does not make it a public charitable organization.    There are few individuals who do not, from time to time, so contribute to the relief of the unfortunate.

If the facts that the property of this corporation was contributed for purposes of its existence, that such purposes are not commercial and not for profit and make for private and public righteousness, are to be made the ground of decision, it would follow, would it not, that, in all cases where the facts existed, the rule of nonliability contended for must be applied?    The number of incorporated religious, fraternal, scientific, agricultural, and benevolent associations is very great.    The property of most of them is contributed, and the objects and purposes are noncommercial and morally or materially beneficent.    To the works of many of them the definition of charity would apply. To any total of good deeds and of beneficial public results, each corporation of the classes named will insist that it has contributed.    The law cannot classify, at least it has not classified, them by their actual accomplishments, nor can the courts enforce or relieve from the operation of rules of proper conduct according to the net showing of beneficence.    The defendant corporation is a legal entity with which the law has to deal.    It uses, in the accomplishment of its objects, property which it owns and manages, and in such management it acts by and through chosen agents.    Incident to such management are duties

which, unperformed or badly performed, may support corporate obligations. Property conveyed to it, generally, is presumed to be conveyed for the statute purposes of its organization, and is subject to the risks of corporate management.

Precise precedent is found for the position of the plaintiff in this case, and some effect may be given to the facts that in Massachusetts the statute of Elizabeth is in full force, and that the court which determined *McDonald* v. *General Hospital*, 120 Mass. 432; *Benton* v. *City Hospital*, 140 Mass. 13; *Donnelly* v. *Cemetery Ass'n*, 146 Mass. 163; *Shepard* v. *Creamer*, 160 Mass. 496; *Chapin* v. *Holyoke Y. M. C. A.*, 165 Mass. 280; *McAlister* v. *Burgess*, 161 Mass. 271 (24 L. R. A. 158); *Davis* v. *Congregational Society*, 129 Mass. 367—also determined *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487, a case in which the facts were substantially as they are in the one at bar, and held that plaintiff was entitled to recover.

In the case of *Davis* v. *Congregational Society*, supra, the action was tort for personal injuries sustained by falling over a wall on defendant's premises. Plaintiff attended an evening meeting in defendant's house of worship under a general express invitation so to do, and claimed that in leaving the church, by reason of defendant's failure to provide a reasonably safe way to and from the church, she was injured. It is said:

" The application of the rules on which the defendant's liability depends is not affected by the consideration that this is a religious society, and that the plaintiff came solely for her own benefit or gratification. It makes no difference that no pecuniary profit or other benefit was received or expected by the society. The fact that the plaintiff comes by invitation is enough to impose on the defendant the duty which lies at the foundation of this liability, and that, too, although the defendant in giving the invitation was actuated only by motives of friendship and Christian charity."

*Rector, etc., of the Church of the Ascension* v. *Buck-*

*hart*, 3 Hill (N. Y.), 193, was a case where one passing along the street was injured by the falling of the walls of a church which had been before then destroyed by fire and the walls negligently left standing. He was held entitled to recover his damages from the church society.

On the other hand, the case of *Haas* v. *Missionary Society*, 26 N. Y. Supp. 868, is cited and relied upon by counsel for defendant. There defendant was a religious corporation, and the question was stated to be:

"Whether, under the laws of this State, the plaintiff can maintain an action to recover damages for injuries received by reason of the negligence of an employé of the defendant; there being no allegation in the complaint that such employé was not fully qualified for the work he was engaged to perform, or that there had been any negligence on the part of the officers of the corporation in his selection."

The particular negligence alleged does not appear. After a review of some of the cases, which, the opinion states, proceed upon the ground that to permit recovery would be to divert a trust fund, it is held that religious corporations are upon the same footing as hospitals or other charitable institutions; that the objects of the organization are as worthy and the trusts as sacred as in any other class of cases. It is to be observed that the point for decision, as stated, is a very narrow one, and no mention is made of the earlier New York cases to which I have referred. Neither does it appear whether or not the defendant was, in fact, trustee of a fund under some express trust created by the donor thereof, or whether plaintiff was a beneficiary of the fund or of the society.

I confess to a feeling which I assume is shared by many, favorable to some limitation of the liability of church societies to respond for the torts of managing officers. That they have not been so relieved by terms of positive law must be admitted. It is to my mind equally clear there is no recognized rule of public policy upon which they may rely in this case for such exemption. It is to the

legislature and not to the courts that the application for relief must be made.

The judgment of the court below sustaining the demurrer to the declaration is reversed. Defendant will be given 20 days in which to plead.

BLAIR, J., concurred with OSTRANDER, J.

CARPENTER, J. Defendant is a Methodist Episcopal Church, incorporated under Act No. 11 of the Public Acts of 1899. It is charged in plaintiff's declaration that while he (plaintiff) was at work for a contractor tinting the ceiling of defendant's church edifice, the scaffolding upon which he stood, and which was furnished by defendant, and which was defective owing to defendant's negligence, broke, and that he was thrown to the floor and injured. Defendant demurred to this declaration upon the ground that it "is not liable for any neglect or default of any agent or servant having the care or custody of its property," and upon other grounds which need not be mentioned. This demurrer was sustained, and judgment entered in defendant's favor. Plaintiff asks us to reverse that judgment.

I agree with my Brother OSTRANDER that we should decide this case upon the assumption that defendant's property "is not held subject to any express trust created by the grantor or vendor of the property," and that we should "proceed upon the theory that the corporation may not devote its property to the use of any other religious denomination or to other than religious purposes." The principle of respondeat superior—that one is responsible for the acts of his agent—applies, and makes defendant liable for the wrong done to plaintiff, unless defendant is exempt from the operation of that principle because it is administering a charitable trust. The claim is made that it is so exempt by reason of *Downes* v. *Harper Hospital*, decided by this court in 1894 and reported in 101 Mich. 555 (25 L. R. A. 602). See, also, *Pepke* v. *Grace Hospital*, 130 Mich. 493. In *Downes* v.

*Harper Hospital* this court held, as correctly stated in the headnote to that case:

"A corporation organized and maintained for no private gain, but for the proper care and medical treatment of the sick, and to that end to manage a trust fund donated for that purpose, cannot be made liable for injuries sustained by a patient by reason of the negligent acts of its managers or employés."

It is urged that that case does not apply, because a church fund which is a fund devoted to religious purposes is not—like a fund devoted to the care and medical treatment of the sick—a charitable trust fund. It is, in my judgment, important to determine whether this distinction is sound.

In *Allen* v. *Duffie*, 43 Mich. 1, this court decided that a subscription made on Sunday for the purpose of erecting a house of worship for a religious society was a work of charity, and therefore enforceable in the courts. In the course of that opinion, which is written by Justice COOLEY, it is said:

"Charity is active goodness. It is doing good to our fellow men. It is fostering those institutions that are established to relieve pain, to prevent suffering, and to do good to mankind in general, or to any class or portion of mankind. * * * It was never doubted, so far as we know, that all the necessary or usual work connected with religious worship was work of charity. If it were not so, the minister who preaches, the organist and precentor who furnish the music, and the sexton who cares for the building on Sunday, would be violating the law every day they performed service for their religious society, and not only would be precluded from recovering compensation, but might be punished for services which are proper in themselves, and for which the day is specially set apart. But their work is not illegal, because it is, in a true sense, and indeed in the very highest sense, charitable. Religious societies are formed to do good to mankind. * * * But, as the public is not taxed for the support of churches and other religious societies, a private donation in their aid is not charity in the same sense in which a donation which

relieves a public burden is a charity. The charity in such case consists in giving aid to an institution whose purpose is to do good in other ways than by making pecuniary burdens lighter, and this, as is said above, is charity in a higher sense than is the mere relief from a pecuniary burden."

It is settled by this decision that, in contributing to a church fund, one is performing a work of charity. Does it not follow that the fund contributed to is a charitable fund? Both the Am. & Eng. Enc. Law (see volume 5, p. 894 [2d Ed.]) and the Cyclopedia of Law and Procedure (see volume 6, p. 900) define public charity as:

"A gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either *by bringing their minds or hearts* under the influence of education or *religion*, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

It cannot justly be contended that the notion that gifts for religious purposes are charitable is derived from the statute of Elizabeth, for it is correctly stated in 6 Cyc. p. 913:

" Gifts for the advancement of religion were held charitable long before the statute of Elizabeth, and are, by analogy, within that statute, though the 'repair of churches' is the only reference thereto in its summary of purposes," citing *Powerscourt* v. *Powerscourt*, Beatty, 572.

It is contended that the fund of a particular church like that of defendant is not charitable within the foregoing definition, because it is to be used, not for the benefit of an indefinite number of persons, but for the benefit of its own members, or, to quote from the opinion of Justice OSTRANDER, its property "is devoted primarily and essentially to the purpose of the particular body which owns it." We cannot answer this contention better than by quoting from the decision of the supreme court of Massa-

chusetts in *McAlister* v. *Burgess*, 161 Mass. 271 (24 L. R. A. 158):

" 'The very term "church" imports an organization for religious purposes, and property given to it eo nomine, in the absence of all declaration of trust or use, must, by necessary implication, be intended to be given to promote the purposes for which a church is instituted, the most prominent of which is the public worship of God.' *Baker* v. *Fales*, 16 Mass. 495.

"It follows that the legitimate use by a church of property so given must result in its application for the benefit of those who attend upon, or are within the sphere of the influence of, the services of the church, by bringing them under the influence of religion.   It is a matter of common knowledge that the individuals who attend the services of any particular church are not limited to the members of that church, but are an indefinite and varying number of persons, and there can be no question that an indefinite number of persons are constantly benefited by having their minds and hearts brought under the influence of religion by poor churches of the city of Boston and vicinity.   (The gift in question was a gift 'for the benefit of poor churches of the city of Boston and vicinity.')   *   *   *

"In our opinion, a gift to a church, without restrictions as to the use to be made of the property, is a gift to be applied for the promotion of public worship and of religious instruction, which must necessarily influence other than church members, and, if in trust, has all the elements of a public charity."

In this opinion the court distinguished *Old South Society* v. *Crocker*, 119 Mass. 1 (this is typical of several cases which it is contended are opposed to its reasoning), by pointing out that the property there in question was conveyed to the church (part of it was conveyed and part devised) "not for the general purposes of the church," but "for the erection of a meetinghouse, and of a dwelling for the minister," and concluded by stating:

"The case is certainly not an authority for the position that a gift for the benefit of a church, simpliciter, is not a public charity."

It is true that the statutes of this State for the incorporation of hospitals are different from those for the in-

corporation of churches; but I can find nothing in those statutes from which it may be argued that the former is a public charitable institution, and that the latter is not. An examination of those statutes shows that there is a likeness and a difference between corporations organized for a hospital purpose and those organized for a religious purpose. The likeness is this: each holds its property for a trust purpose. The difference is this: the property of the hospital is devoted to the care and medical treatment of the sick, the property of the church is devoted to a religious purpose. We cannot hold that the property of a hospital is a charitable trust fund, and that the property of a church is not a charitable trust fund, unless we hold that funds devoted to a religious purpose are not charitable trust funds. The foregoing reasoning and authorities prevent our so holding. On the contrary, we are compelled to hold that funds devoted to a religious purpose are charitable trust funds. I conclude, therefore, that we cannot hold the principle of the decision in *Downes* v. *Harper Hospital,* supra, inapplicable, upon the ground that the funds of the church are not charitable trust funds.

This leads us to the inquiry: Is there any other ground upon which we should hold *Downes* v. *Harper Hospital* inapplicable? There is this distinction between *Downes* v. *Harper Hospital* and this case, viz., in the *Downes Case* plaintiff was a patient in defendant's hospital, and, therefore, a beneficiary of the charitable trust administered by the hospital corporation, while in this case he was an employé of defendant's contractor, and not a beneficiary of the trust administered by defendant. If we hold that the principle of the *Downes Case* applies to the case at bar, we must declare that that principle exempts a corporation administering a charitable trust from all liability for the torts of its agents, and, as a corporation can act only by and through its agents, that it is exempt from all liability whatsoever for torts. What is the principle underlying the *Downes Case?* Does it

exempt a corporation administering a charitable trust from all liability for torts? Those who answer this question in the affirmative cannot support their position by appealing to the reasoning of the opinion in that case. While that opinion says: "The law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution," the pith of its reasoning in my judgment is contained in the following words:

"It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employés, though such acts result in damages to an innocent *beneficiary*. Those voluntarily accepting the benefit of the charity accept it upon this condition."

Let us determine the principle underlying the *Downes Case*. In this undertaking we are not aided by cases like *Fire Insurance Patrol* v. *Boyd*, 120 Pa. 624 (1 L. R. A. 417), which held that a principal is not liable for the negligence of one acting in the capacity of a governmental agent—for neither the Harper Hospital nor its offending servants were acting in that capacity—but we do receive aid, and great aid, by examining decisions similar to that of *Downes* v. *Harper Hospital* made by other courts. Among those decisions are: *Feoffees of Heriot's Hospital* v. *Ross*, 12 Clark & F. 506; *McDonald* v. *General Hospital*, 120 Mass. 432; *Williamson* v. *Industrial School*, 95 Ky. 251 (23 L. R. A. 200); *Perry* v. *House of Refuge*, 63 Md.20; *City of Richmond* v. *Long's Adm'rs*, 17 Grat. (Va.) 375; *Hearns* v. *Waterbury Hospital*, 66 Conn. 98 (31 L. R. A. 224); *Eighmy* v. *Railway Co.*, 93 Iowa, 538 (27 L. R. A. 296); *Joel* v. *Woman's Hospital*, 89 Hun (N. Y.), 73; *Van Tassell* v. *Eye & Ear Hospital*, 15 N. Y. Supp. 620; *Collins* v. *Medical School & Hospital*, 59 App. Div. (N. Y.) 63; *Conner* v. *Sisters of the Poor*, 7 Ohio N. P. 514, 10 Ohio Dec. 86; *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411; *Union Pacific R. Co.* v. *Artist*, 60 Fed. 365 (23 L. R. A. 581);

*Powers* v. *Homœopathic Hospital*, 47 C. C. A. 122 (65 L. R. A. 372).

In each of these cases, except that of *Glavin* v. *Rhode Island Hospital*, it was held, as held in the *Downes Case*, that the beneficiary of the charitable trust could not recover for injuries resulting from the torts of the agents of the trustee corporation. Inasmuch as this court is committed to this doctrine, we need not consider the decision of *Glavin* v. *Rhode Island Hospital*, which denies it. We are endeavoring to ascertain, not whether the doctrine is sound, but its true underlying principle. Decisions denying a doctrine afford no aid in construing it. In the latest of these cases (*Powers* v. *Homœopathic Hospital*)—the opinion is exhaustive and elaborate, and discusses nearly all the authorities—it is held that the ground upon which liability is denied is that of assumed risk; the court saying:

" One who accepts the benefit either of a public or of a private charity, enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity, at any rate if the benefactor has used due care in selecting those servants."

If this is correct, it is scarcely necessary to say that that principle has no application to the case at bar. Is it correct? The ground upon which liability is denied in nearly all the foregoing cases is that stated in the *Downes Case*, viz., that it would thwart the purpose of the trust; that is, it would oppose the will of the founder of the trust to pay from the trust funds damages caused by an agent's torts. It is entirely logical to say that this will must be recognized by beneficiaries of the trust. It may justly be said that the benefit of the trust is extended to them and accepted by them upon the implied condition that they shall recognize that will. By becoming beneficiaries they agree to recognize it. But I can see no ground upon which it may be held that the rights of those who are not beneficiaries of a trust can in any way be affected by the will of its founder. The rights of such persons are those created

by general laws, and the duties of those administering the trust to respect those rights are also created by general laws. The doctrine that the will of an individual shall exempt either persons or property from the operation of general laws is inconsistent with the fundamental idea of government. It permits the will of the subject to nullify the will of the people. Nor can I conceive any ground upon which a court can hold that effect can be given to that will when it relates to property devised or conveyed for the purpose of a charitable trust. Such a holding must rest upon the argument that the advantage reaped by the public from such trusts justify the exemption; that is, as applied to this case, the advantages to the public justify defendant's exemption from liability for wrongs done to individuals. If this argument is sound—and its soundness may be questioned, for there are those who will deny that the advantages to the public justify the wrong to the individual—it should be addressed to the legislative, and not to the judicial, department of the government. It is our duty as judges to apply the law. We have no authority to create exemptions or to declare immunity.

It is true that in many of the cases above cited, it is stated that those administering a trust fund are not responsible for the torts of their agents, because damages for such torts cannot be paid from the trust fund. This statement was first made by the house of lords of England in 1839 in deciding the case of *Duncan* v. *Findlater*, 6 Clark & F. 894. In a subsequent case (*Mersey Docks* v. *Gibbs*, 11 H. L. Cas. 686) the same tribunal said that this statement was unnecessary to the decision of the case in which it was announced, and that it was an incorrect statement of the law. Precisely the same may be said of the repetition of that statement in the foregoing cases. We are justified in saying that the statement was unnecessary to their decisions, because, in determining the noncontract obligation of a trustee toward the beneficiaries of his trust (and that was the question involved in each of these

cases), it was not necessary to determine his obligation to others. It is equally true that the proposition that trust funds cannot be used to compensate wrongs committed by the agent of the trustee is not a correct statement of the law. That proposition, in my judgment, must rest on the principle—which I have heretofore endeavored to prove unsound—that the will of an individual exempts property from the operation of the general laws of the land. It should also be said that, if the trustee be an individual, he is, like other individuals, personally responsible for wrongs committed by his agents (*Powers* v. *Homœopathic Hospital*, supra; *Shepard* v. *Creamer*, 160 Mass. 496; *Baker* v. *Tibbetts*, 162 Mass. 468; *Benett* v. *Wyndham*, 4 De Gex, F. & J. 259), and, if he is adjudged liable therefor, though an execution will not run against the trust funds, because the judgment is against him personally, he may discharge that liability, or reimburse himself if he has discharged it, from the trust funds. *Powers* v. *Homœopathic Hospital*, supra, and cases therein cited. *Parmenter* v. *Barstow*, 22 R. I. 246 (63 L. R. A. 227), is not opposed to this principle. That case holds no more than this: that trust property may not "be impaired or dissipated through the negligence or improvidence of trustees." This does not mean that the trustee may not reimburse himself for liability occasioned, not by his own, but by his servant's negligence. The circumstance that the trustee is a corporation instead of an individual cannot affect the question of liability. If authority is needed to justify this statement—which necessarily follows from the elementary principle of law that corporations, like individuals, are amenable to the law of the land—it is found in the following cases: *Gilbert* v. *Trinity House*, L. R. 17 Q. B. Div. 795; *Foreman* v. *Mayor, etc., of Canterbury*, L. R. 6 Q. B. 214; *Mersey Docks* v. *Gibbs*, supra. The circumstance that the trustee is a corporation and not an individual may, however, affect the method of satisfying a judgment in favor of a plaintiff who has been wronged by an agent's torts.

I can see no reason why the execution issued in such a case may not be levied upon the trust property, particularly if that constitute the entire property of the corporation.

It has been suggested (see *Hearns* v. *Waterbury Hospital*, 66 Conn. 125 [31 L. R. A. 224]) that the true principle underlying the *Downes* and similar cases is that the "defendant does not come within the main reason for the rule of public policy which supports the doctrine of respondeat superior. It derives no benefit from what its servant does in the sense of that personal and private gain which was the real reason for the rule." This suggestion—which is not a necessary part of the reasoning in the decision of that case—is without force, unless it may be said that the doctrine of respondeat superior has no application where the business in which an agent is employed is not carried on for the purpose of profit. I think one cannot carefully read the elaborate opinion in the *Hearns Case* and examine the authorities therein cited (see, particularly, *Foreman* v. *Mayor, etc., of Canterbury*, L. R. 6 Q. B. 214; *Gilbert* v. *Trinity House*, L. R. 17 Q. B. Div. 795; *Levingston* v. *Guardians of the Poor*, 2 I. R. C. L. 202; and *Mersey Docks* v. *Gibbs*, supra) without reaching the conclusion that the doctrine of respondeat superior does apply, though the business is not carried on for the purpose of profit.

I conclude from this reasoning that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot, therefore, claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort, and that *Downes* v. *Harper Hopital* and other similar cases are consistent with this rule. They rest upon the principle, correctly stated in *Powers* v. *Homœopathic Hospital*, supra, viz., that the beneficiary of such charitable trust enters into a contract whereby he assumes the risk of such torts. It is not surprising that years should have elapsed before the

correct legal principle governing these cases was announced in *Powers* v. *Homœopathic Hospital.* The discovery of correct legal principles, like the discovery of scientific and social truths, requires time and patient investigation.

It is an argument of no great force to say that, during this interval, decisions have been made which, tested by this principle, are erroneous. Indeed, it would be surprising were it otherwise. I find, however, but two such decisions. Those are *Haas* v. *Missionary Society*, a decision made, not by the highest court, but by the court of common pleas of New York, reported in 26 N. Y. Supp. 868, and *Davis* v. *Congregational Society*, 129 Mass. 367. In the *Haas Case*, the liability of a church society "in an action to recover damages for injuries received by the negligence of an employé" was denied. In the *Davis Case* the liability of a church society for the torts of its manager to one who attends a religious meeting in its church edifice is affirmed. If the plaintiff in the *Haas Case* was a beneficiary of the church society—and this is a question of fact which cannot be decided from the report of the case—that decision is in harmony with this opinion. If the plaintiff in the *Davis Case* was not a beneficiary of the charitable trust—and this is a debatable question of law—that decision is in harmony with this opinion. Only upon the assumption that the plaintiff in the *Haas Case* was not, and that the plaintiff in the *Davis Case* was, a beneficiary of the charitable trust, are those cases inconsistent with this opinion. Upon the same assumption they are inconsistent with each other; the *Haas Case* denying liability for all torts committed by an agent; the *Davis Case* affirming liability even when a beneficiary sustains injury from such torts. Upon this assumption each of these cases stands alone. Each is opposed to the other as well as to the reasoning and authorities cited in this opinion, and, I think, should be disregarded. On the other hand, the cases of *Rector, etc., of the Church of the Ascension* v. *Buckhart*, 3

Hill (N. Y.), 193, and *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487, are in harmony with this opinion. The facts in the latter case were almost precisely like those in the case at bar. In the former case, plaintiff, while passing along the street, was injured by the fall of the building of the defendant church through defendant's negligence. In each of these cases defendant was held liable. I think these decisions sustain my principal contention. For, unless the principle of the *Downes Case* is as stated in this opinion, there is, in my judgment, an irreconcilable conflict between that principle and those decisions, and we are bound to say that there is no such conflict because that principle prevails in the States whose courts pronounced those decisions. It follows from this reasoning that the principle of the *Downes Case* is not applicable to the case at bar, and that plaintiff is entitled to recover.

It is said that, in determining that the principle of nonliability recognized in the *Downes Case* is limited in its application to those who are beneficiaries of a charitable trust, we decide "a question not before us." Is this true? We must determine whether the principle of the *Downes Case* applies to this case. We determine that it does not, and it is our duty to state reasons for that determination. The only reason satisfactory to my mind is that the principle of nonliability declared in the *Downes Case* is limited to those who are beneficiaries of a trust fund. It is impossible for me to decide this case without giving that reason. From my point of view, then, the question under present consideration is "before us."

The judgment of the court below sustaining the demurrer is reversed, and the defendant will be given 20 days in which to plead to the declaration.

McALVAY, C. J., and GRANT, MONTGOMERY, HOOKER, and MOORE, JJ., concurred with CARPENTER, J.